# EXHIBIT 7

SILVER GOLUB & TEITELL LLP
DAVID S. GOLUB

April 15, 2024

John F. Costa, Esq.
Ryan Ryan Deluca LLP
1000 Lafayette Boulevard
Suite 800
Bridgeport, CT 06604

Re: Elizabeth Tigani v. Westchester Medical Group, P.C. and Elias
Our File No. 18,070

Dear John:

We have now completed depositions of the parties' experts in the above matter. Defendants have, to date, refused to make any settlement offer, insisting they did not violate the standard of care and disputing the extent of Ms. Tigani's injuries and the Tiganis' decision to engage surrogates to have further children. Whatever the basis for Defendants' prior contentions, the depositions of Defendants' liability and damages experts directly belie Defendants' positions. As set forth below, Defendants' liability expert, Dr. Carpenter, has literally admitted Dr. Elias's violations of the standard of care and further attributed Plaintiff's injuries to Dr. Elias's "surgical error" in "mistakenly" puncturing a hole in Ms. Tigani's utero-vaginal wall. Moreover, Defendants' damages experts, Dr. Weinstein and Dr. Gorelick, have agreed with Dr. Rosenblum's description of Ms. Tigani's injuries and expressly declined to second-guess Dr. Rosenblum's recommendation that the Tiganis have further children through use of surrogates.

As you know, this case is scheduled for a settlement conference with the Court on April 30, 2024 and, failing settlement, for jury selection and trial beginning May 21, 2024. Defendants have disclosed insurance limits of $4 million applicable to Ms. Tigani's claims. In light of the admissions by Defendants' experts recounted below, this insurance is far less than the likely verdict for Ms. Tigani. I am writing to convey Plaintiff's offer to settle this action now for the full amount of Defendants' available insurance, and to advise you that if Defendants do not accept Plaintiff's offer by April 30, 2024, Plaintiff will not in the future offer to settle within Defendants' insurance limits.

**Dr. Carpenter's Admissions**

It is undisputed that Dr. Elias did not recommend a cesarean section to Ms. Tigani, or discuss the risks and benefits of intervening prior to midnight, even though, as of 10:30 p.m. on December 6, 2014, there had been no fetal descent during Ms. Tigani's second stage of labor for

over three hours. **Dr. Carpenter expressly admitted that this was a violation of the standard of care by Dr. Elias:**

> Q. I want you to assume that between 16:55 and 20:30, there was no discussion of a cesarean section with Ms. Tigani.
>
> A. You want -- you want me to assume that; is that correct?
>
> Q. Yes. If you assume that, **isn't it true that that's a violation of the standard of care** by Dr. Elias who was required to discuss the risks and benefits of a -- of -- of intervening within three hours or an approximate three hour time frame of the start of the second stage of labor?
>
> A. **I agree.** (Carpenter Dep. at 125).[1]

In addition, Dr. Elias testified at her deposition that even when she offered Ms. Tigani a cesarean section around midnight on December 6, she failed to advise Ms. Tigani of the risks of maternal injury from continuing the labor:

> Q. Did you give her any warnings about the risk of continuing to push?
>
> A. No. (Elias Dep. at 119.)

**Dr. Carpenter testified that the standard of care required Dr. Elias to so advise Ms. Tigani and expressly admitted that Dr. Elias's failure to do so at midnight violated the standard of care:**

> **Q. And in 2014, Dr. Elias had an obligation under the standard of care to advise Ms. Tigani of the risks and benefits of a cesarean section, correct?**
>
> **A. Yes.**
>
> Q. I want you to assume that when Dr. Elias raised the issue of a cesarean section with Ms. Tigani, she did not advise Ms. Tigani of the risks of continuing in a prolonged second stage of labor or of the decreasing likelihood of vaginal delivery, which you have said the standard of care required an obstetrician to discuss with the patient in December 2014.

---

[1] Quotations from depositions in this letter are "cleaned up," with bold added, for ease of review.

> If you assume that testimony is accurate, isn't it true that Dr. Elias violated the standard of care in her treatment of Elizabeth Tigani on December 14th -- in December 2014?
>
> A. If she did not apprise the patient of the risk of either option, then -- then she gave incomplete counsel. I agree.
>
> Q. And if she gave incomplete counsel, that was violated of the -- that violated the standard of care as of December 2014, correct?
>
> A. Assuming that in her -- in the nurse's note at that time all the discussion was represented, then I would agree. (Carpenter Dep. at 116-17, 173).

And, most important, Dr. Carpenter admitted that the injuries Ms. Tigani suffered during the cesarean section – the severe avulsion of the utero-vaginal wall and the extensive bladder injury resulting in the fistula – were caused because Dr. Elias committed surgical error, mistakenly believing that she was placing her hand in the uterine incision when, in fact, her hand was outside the uterine incision and literally puncturing a hole in the utero-vaginal wall and continuing through that hole to injure the back of the bladder:

> A. There's an avulsion of the posterior wall of the bladder. There are two separate injuries both due to blunt force exerted, in my interpretation, by the operator's hand rather than pushing -- rather than grasping the fetal head through the uterine wound. At least on some occasions, force was applied to the lower uterine wall and to the bladder causing injury to both those parts of the mother's anatomy. ....
>
> **The operator did not understand where her hand was. She thought her hand was inside the uterus approximate to the baby's head. Her hand was actually in the space below the uterine incision such that she perforated the lower wall of the uterus.**
>
> **Q. Okay. So that the operator's hand mistakenly perforated the wall between the uterus and the vagina and then struck the back of the bladder, injuring the back of the bladder, too, correct?**
>
> **A. Correct.**

Q. When you say operator, you're talking about Dr. Elias, correct?

A. Yes.

Q. So it's an error to puncture -- it's an error -- you agree that it's an error. **When you say error, it's a surgical error, correct?**

**A. Correct.** (Carpenter Dep. at 138-39. 141-42, 142-43).

Dr. Carpenter's admissions, which are consistent with the opinions of Plaintiff's liability expert, effectively establish Dr. Elias and West Med's liability for Ms. Tigani's injuries. Indeed, Dr. Carpenter's testimony that Ms. Tigani's injuries were caused by Dr. Elias's "surgical error" during the performance of the cesarean section independently give rise to liability even without his admissions that Dr. Elias failed to properly counsel Ms. Tigani about the risks of prolonging her second stage of labor in violation of the standard of care.

**Ms. Tigani's Now-Undisputed Injuries**

Moreover, as to Ms. Tigani's damages claims, her treating urologist, Dr. Nirit Rosenblum has confirmed the extent of Ms. Tigani's injuries and has expressly confirmed that she affirmatively recommended the Tiganis' use of a surrogate for future children. Neither of Defendants' urology experts (Dr. Weinstein and Dr. Gorelick) dispute Dr. Rosenblum's description of Ms. Tigani's initial and continuing injuries (which were all confirmed by objective urologic testing, including fluoroscopy), and **both of Defendants' urology experts expressly declined to second-guess Dr. Rosenblum's recommendation for use of a surrogate.** And, in addition to the *urologic* risks supporting Dr. Rosenblum's recommendation, West Med's own treating physician, Dr. Carolan, grudgingly conceded at deposition the *uterine* risks to Ms. Tigani and a fetus should she attempt a pregnancy:

Q. If a woman such as Elizabeth Tigani has this injury and a weakened uterine wall, a pregnancy could cause a uterine rupture, correct?

A. Correct. .... I would recommend that she be delivered by 35 week gestation to prevent rupture of the uterine scar.

Q. And could you assure the woman, could you assure a patient in this kind of situation that there wouldn't be an earlier rupture?

A. No.

Q. If the patient asked you, you would have to advise the patient that there is a risk of uterine rupture even before 35 weeks, even before 30 weeks, correct?

A. Yes.

....

Q. What is the earliest a woman can go into premature labor?

A. 24 weeks.

Q. If Elizabeth Tigani with this injury went into premature labor at 24 weeks, there would be a substantial risk of a uterine rupture, correct?

A. Yes.

Q. And if you were treating, if your were caring for Elizabeth Tigani you would advise her of that, correct?

A. Yes.

Q. Is it possible to assure a patient that there wouldn't be premature labor in a pregnancy?

A. No.

Q. I mean, a uterine rupture during pregnancy can have fatal outcomes for both the mother or the fetus; isn't that true?

A. Yes. (Carolan Dep. at 78-81).

**The Likely Verdict Range Far Exceeds**
**Defendants' Available Insurance Coverage**

Defendants have disclosed a total of $4 million in insurance coverage applicable to Ms. Tigani's claims. In light of Dr. Carpenter's admissions establishing Defendants' liability; Ms. Tigani's substantial injuries, including the initial avulsion injury, the bladder injury and resulting fistula, and the ongoing trapping of urine in her vagina (confirmed on fluoroscopy) producing continuing (permanent) issues of incontinence, and her treating physician's recommendation, in light of her injuries, to avoid pregnancy and use of surrogates; and the over $675,000 in medical

SILVER GOLUB & TEITELL LLP



bills that the Tiganis have *actually* paid (in addition to the $100,000 paid by health insurance), there is a likely verdict in this case in the $8-10 million dollar range, far in excess of the $4 million in coverage.

In addition, Offer of Compromise interest, dating back to the filing of this action in September 2016, will automatically add over 60% interest to any verdict, increasing the recovery by $4-6 million more.

This action has been pending for nearly 8 years, and Ms. Tigani has an interest in resolving this matter now, before incurring the expense and burden of preparing for and undergoing trial. Defendants have refused to date to may *any* offer of settlement – a position that Ms. Tigani believes is untenable in light of Dr. Carpenter's admissions and the unrefuted evidence of Ms. Tigani's substantial damages.

In an effort to settle this action before trial and without further expense, and in light of Defendants' limited insurance, Ms. Tigani offers to settle this matter now for $4 million. This offer will remain open until close of business on April 30, 2024, the date of the scheduled settlement conference in this matter. If the offer is not accepted by 5 p.m. on April 30, 2024, Ms. Tigani will not further agree to settle this matter within the limits of Defendants' available coverage, but will proceed to trial and, upon recovering a verdict in excess of the insurance limits, will seek to collect the verdict from Defendants' assets.

Very truly yours,

/s/ *David S. Golub*

DAVID S. GOLUB

DSG/ds

BY ELECTRONIC MAIL